# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP1870-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Appellant, |
| | v. |
| | David W. Howes, |
| | Defendant-Respondent. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | March 1, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 20, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | John W. Markson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | GABLEMAN, J. joined by ZIEGLER, J. concur (Opinion filed). |
| | KELLY, J. concurs (Opinion filed). |
| DISSENTED: | ABRAHAMSON, J. joined by BRADLEY, A. W., J. and KELLY, J. (joining Part II insofar as it discusses the constitutionality of Wis. Stat. § 343.305 (3) (b)). (Opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant the cause was argued by *Ryan J Walsh*, chief deputy solicitor general, with whom on the brief was *Misha Tseytlin*, solicitor general, *Brad D. Schimel*, attorney general.

For the defendant-respondent, there was a brief by *Mark A. Eisenberg*, *Jack S. Lindberg* and *Eisenberg Law Office, S.C.*, Madison, and oral argument by Mark A. Eisenberg.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP1870-CR
(L.C. No. 2013CF1692)

STATE OF WISCONSIN              :             IN SUPREME COURT

**State of Wisconsin,**

       **Plaintiff-Appellant,**

       **v.**

**David W. Howes,**

       **Defendant-Respondent.**

**FILED**

**MAR 1 2017**

Diane M. Fremgen
Clerk of Supreme Court

Appeal from an order of the Circuit Court. *Reversed and cause remanded.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. This case comes before us by certification from the court of appeals. David Howes was charged with operating a vehicle while intoxicated (OWI) (fourth offense while having a prior OWI within five years) in violation of Wis. Stat. § 346.63(1)(a) (2013-14)[1] and operating a vehicle with a prohibited alcohol concentration (PAC) (fourth offense while having a prior PAC within five

---

[1] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

years) in violation of § 346.63(1)(b) based on analysis of his blood showing a blood alcohol concentration of 0.11 percent.

¶2 Howes moved to suppress the results of a warrantless blood draw, arguing that the deputy that arrested Howes lacked probable cause to do so and, additionally, that the deputy violated Howes' rights by obtaining a warrantless blood draw. The circuit court granted Howes' motion to suppress.[2] The circuit court concluded that the deputy had probable cause to arrest Howes. However, the court reasoned, relying heavily on State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, that the section of Wisconsin's implied consent statutes that permits a blood draw from an unconscious individual is unconstitutional, unless exigent circumstances exist. Because the circuit court concluded that none existed, it suppressed the report of Howes' blood alcohol concentration.[3]

¶3 We conclude that the circuit court correctly determined that the deputy had probable cause to arrest Howes for operating a vehicle with a PAC, and that Howes was arrested prior to obtaining a blood sample. Moreover, based on the totality of circumstances herein, the deputy's warrantless search was permissible under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution under the exigent circumstances doctrine that

---

[2] The Honorable John W. Markson of Dane County presided.

[3] See Wis. Stat. § 343.305(3).

relates to the risk of destruction of evidence.[4] Stated more fully, under the totality of circumstances presented herein, which included a seriously injured, unconscious person, who was being subjected to medical treatments for his injuries and who had 0.02 percent as his PAC threshold, a reasonable officer could have concluded that further delay in drawing Howes' blood would have led to the destruction of evidence through the dissipation and dilution of alcohol in Howes' bloodstream. Therefore, we reverse the order of the circuit court and remand for further proceedings.

## I. BACKGROUND

¶4  At approximately 9:18 p.m. on July 7, 2013, Deputy Robert Schiro of the Dane County Sheriff's Office received a call from dispatch indicating that an individual had been in a motorcycle crash with a deer. Dispatch detailed that the driver was unconscious. Deputy Schiro arrived at the scene of the accident and found the deceased deer and the motorcycle in the middle of the road. The driver of the motorcycle was the defendant in the present case, David Howes. He was positioned approximately 40 feet away from the deer and was seriously

---

[4] Because we conclude that the search was reasonable under the totality of circumstances presented herein, we need not reach whether Wis. Stat. § 343.305(3)(b) is facially unconstitutional. See generally, State v. Stoehr, 134 Wis. 2d 66, 70, 396 N.W.2d 177 (1986) ("When this court grants direct review upon certification, it acquires jurisdiction of the appeal, which includes all issues, not merely the issues certified or the issue for which the court accepts the certification.").

injured and unconscious.   When the deputy arrived, Emergency Medical Services (EMS) was already attending to Howes.

¶5   At the scene, there were several bystanders situated near EMS and the ambulance.   The deputy unsuccessfully searched for a witness that had observed the accident.   Though unsuccessful, the deputy testified that an individual approached him and, referring to Howes, stated he smelled an odor of intoxicants.   As the lone police officer at the scene, the deputy had multiple responsibilities relating to containing the accident scene and was unable to obtain the individual's name.

¶6   While EMS continued to attend to Howes, the deputy had to ensure the safety of those traveling through the accident scene because a dead deer and a motorcycle were partially blocking the road.   The deputy began to direct traffic lanes that ran through the scene of the accident.   The deputy also ensured that no one moved the motorcycle and preserved other evidence relating to the accident.   The deputy asked bystanders to move out of EMS's way.   During his investigation, other officers arrived, and Howes, still unconscious, was transported to the hospital.

¶7   The deputy then left to go to the hospital to follow up with Howes.   During the drive to the hospital, the deputy checked Howes' Department of Transportation records.   He testified that his purpose was to confirm that the motorcycle driver was in fact Howes and to check Howes' driving record.   As a result of this record check, the deputy discovered that Howes had three prior OWI/PAC convictions.   These prior convictions

4

signaled to the deputy that Howes had a PAC threshold more restrictive than the usual 0.08 percent. Specifically, Howes violated the law if he had operated the motorcycle with a blood alcohol concentration of as little as 0.02 percent.[5]

¶8 After the deputy arrived at the hospital, he immediately spoke with the two Emergency Medical Technicians (EMTs), who were in the ambulance with Howes as he was transported to the hospital. The deputy inquired about whether either of the EMTs had smelled alcohol on Howes' breath. The deputy testified that the EMT positioned in the ambulance near Howes' head smelled a "high odor of intox coming from" Howes. The EMT positioned in the ambulance at Howes' feet did not smell intoxicants.

¶9 The deputy proceeded to the emergency room in which medical staff was treating Howes. The deputy testified that "numerous nurses and medical staff [were] attending to [Howes] at the time." The ongoing medical treatment prevented the deputy from approaching Howes. However, one nurse told the deputy that there was a strong odor of intoxicants in Howes' room.

¶10 The deputy observed that Howes had not regained consciousness and that he was intubated to assist his breathing. The deputy spoke with a physician with regard to Howes' medical condition. The physician said that Howes was in critical

---

[5] See Wis. Stat. § 340.01(46m)(c).

5

condition and possibly had a brain injury. He said that Howes needed a CT scan to further evaluate his injuries.

¶11 At approximately 10:15 p.m., the deputy arrested Howes for operating a motor vehicle with a prohibited alcohol concentration. The deputy testified that he arrested Howes for the following reasons: (1) three different individuals smelled an odor of intoxicants emanating from Howes; (2) Howes had a prohibited alcohol concentration threshold of 0.02 percent due to his previous drunk-driving convictions; and (3) the crash.

¶12 After arresting Howes, and while Howes was still unconscious, the deputy read Howes the informing the accused form. The deputy asked Howes if he would submit to an evidentiary chemical test of his blood, and Howes did not respond.[6] The deputy then instructed hospital staff to draw a blood sample to test for alcohol concentration.

¶13 At 11:17 p.m., roughly two hours after the accident and an hour after the deputy asked hospital staff to draw Howes' blood, a phlebotomist completed the blood draw. The deputy testified that the hour delay occurred either because medical personnel at the hospital were too busy to draw the blood, or Howes may have had a CT scan during this interim period.[7] The

---

[6] The deputy said he took these steps even though Howes was unconscious because he thought he was legally required to do so.

[7] If a CT scan occurred during this period, it would be consistent with a physician's statement to the deputy shortly after the deputy arrived at the hospital that Howes needed to have a CT scan.

report of the blood test stated that Howes had a 0.11 percent blood alcohol concentration. This was well in excess of the 0.02 percent prohibited alcohol concentration threshold to which he was subjected due to his prior drunk-driving convictions.

¶14 Howes was charged with operating a vehicle while intoxicated (OWI) (fourth offense while having a prior OWI within five years) in violation of Wis. Stat. § 346.63(1)(a) and operating a vehicle with a prohibited alcohol concentration (PAC) (fourth offense while having a prior PAC within five years) in violation of § 346.63(1)(b). Howes moved to suppress the report that resulted from the blood draw. The circuit court granted Howes' motion. First, the circuit court concluded that the deputy had probable cause to arrest Howes. The court based its conclusion, in part, on the statements to the deputy by various individuals indicating that there was a smell of intoxicants coming from Howes. The court also concluded that "central to the probable cause determination [was] that this was a gentleman who had three prior convictions," and was subject to a PAC threshold of 0.02 percent, rather than 0.08 percent. As part of this determination, the court found that the deputy had searched Howes' driving record prior to arresting Howes; and therefore, he knew that Howes was subject to a PAC threshold of 0.02 percent.

¶15 Next, the circuit court addressed the constitutionality of Wisconsin's implied consent statute as it relates to unconscious persons, Wis. Stat. § 343.305(3)(b). The court concluded that § 343.305(3)(b), which allows withdrawal of

7

blood from an unconscious person, is unconstitutional if the blood draw is done without a warrant or the presence of exigent circumstances. After finding the statute unconstitutional, the circuit court, without analysis, concluded that there were no exigent circumstances presented by this case.

¶16 The State appealed and the court of appeals certified the case for our review. We now reverse.

## II. DISCUSSION

### A. Standard of Review

¶17 "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." State v. Tullberg, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (quoting State v. Robinson, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463). "When presented with a question of constitutional fact, this court engages in a two-step inquiry." Robinson, 327 Wis. 2d 302, ¶22.

¶18 First, the circuit "court's findings of evidentiary or historical fact will not be overturned unless they are clearly erroneous." State v. Richter, 2000 WI 58, ¶26, 235 Wis. 2d 524, 612 N.W.2d 29. Next, we "independently determine whether the historical or evidentiary facts establish exigent circumstances sufficient to justify the warrantless" search. Id.

¶19 In the present case, we apply this two-step inquiry to determine whether the warrantless blood draw was reasonable under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.

8

B. General Principles

¶20 A blood draw is a search of the person. Tullberg, 359 Wis. 2d 421, ¶31 ("A blood draw to uncover evidence of a crime is a search within the meaning of the Fourth Amendment."). At issue in the present case is whether the deputy acted reasonably in instructing hospital personnel to draw Howes' blood when he did not have a warrant. Accordingly, we must determine whether the deputy's warrantless search of Howes was permissible under the Fourth Amendment and Article I, Section 11.

¶21 "The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Id., ¶29 (quoting Robinson, 359 Wis. 2d 421, ¶24). "The touchstone of the Fourth Amendment is reasonableness." Id. (internal quotation marks omitted). As such, "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." Id. (internal quotation marks omitted). "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978)).

¶22 Absent from the text of the Fourth Amendment is the obligation that the government must obtain a warrant to conduct

9

a search. However, it is axiomatic that "warrants must generally be obtained." Missouri v. McNeely, 133 S. Ct. 1552, 1569 (2013) (Roberts, C.J., concurring in part and dissenting in part). Consistent with these principles, "[a] warrantless search is presumptively unreasonable." Tullberg, 359 Wis. 2d 421, ¶30.

¶23 To overcome this presumption, a warrantless search must fall under an exception to the warrant requirement. See State v. Foster, 2014 WI 131, ¶32, 360 Wis. 2d 12, 856 N.W.2d 847 ("Consistent with the United States Supreme Court's interpretation of the Fourth Amendment, we have adhered to the basic principle that warrantless searches are per se unreasonable unless they fall within a well-recognized exception to the warrant requirement."). "One exception to the warrant requirement is the exigent circumstances doctrine, which holds that a warrantless search complies with the Fourth Amendment if the need for a search is urgent and insufficient time to obtain a warrant exists." Tullberg, 359 Wis. 2d 421, ¶30.

¶24 "There are four well-recognized categories of exigent circumstances . . . 1) hot pursuit of a suspect, 2) a threat to the safety of a suspect or others, 3) a risk that evidence will be destroyed, and 4) a likelihood that the suspect will flee." Richter, 235 Wis. 2d 524, ¶29. The burden is on the government to establish that its actions fit into one of the well-recognized exceptions. State v. Phillips, 2009 WI App 179, ¶7, 322 Wis. 2d 576, 778 N.W.2d 157. And, "the test for determining

10

the existence of exigent circumstances is an objective one." Robinson, 327 Wis. 2d 302, ¶30.

¶25 If exigent circumstances are present, we have distilled four additional requirements that a warrantless blood draw in a drunk driving case must satisfy to be reasonable under the Fourth Amendment:

> (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

State v. Kennedy, 2014 WI 132, ¶17, 359 Wis. 2d 454, 856 N.W.2d 834 (quoting State v. Bohling, 173 Wis. 2d 529, 534, 494 N.W.2d 399 (1993) abrogated in part by Missouri v. McNeely, 133 S. Ct. 1552 (2013)). We have "explained that probable cause to arrest for a drunk-driving related violation or crime 'substitutes for the predicate act of lawful arrest' under the first factor." Id. (quoting Bohling, 173 Wis. 2d at 534 n.1). "The second factor, whether there is a clear indication that the blood draw will produce evidence of intoxication, in this case is also satisfied by the same facts that support a finding of probable cause to arrest." Id. (internal quotation marks omitted).

¶26 In the present case, there is no dispute as to the presence of the third and fourth factors. The blood was drawn in a reasonable manner; it was taken in a hospital by a person authorized to draw blood. See State v. Krajewski, 2002 WI 97,

11

¶47, 255 Wis. 2d 98, 648 N.W.2d 385 ("Krajewski and the State stipulated that the blood draw was taken in a hospital by a registered nurse. Thus, the blood draw was effected in a reasonable manner."). Similarly, with respect to the fourth factor, the suspect did not present a reasonable objection to the type of search the deputy sought to conduct, a blood draw.[8] Accordingly, we must examine whether the deputy lawfully

---

[8] An analysis under the fourth factor does not require us to determine whether an individual consented to a search; instead, it refers to an objection to the type of search the officer chose to conduct (e.g., a blood draw as opposed to a breathalyzer). See State v. Krajewski, 2002 WI 97, ¶48, 255 Wis. 2d 98, 648 N.W.2d 385. As this Court in State v. Kennedy, 2014 WI 132, 359 Wis. 2d 454, 856 N.W.2d 834 recognized, the fourth factor is derived from the Supreme Court's decision in Schmerber v. California, 384 U.S. 757 (1966). In Schmerber, the Supreme Court explained that an analysis under the fourth factor is reserved for those instances in which an individual has raised a legitimate and significant objection to having his or her blood drawn. The Court concluded that the defendant in that case did not raise a reasonable objection to the blood draw because the defendant was "not one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing, such as the 'Breathalyzer' test petitioner refused." Schmerber, 384 U.S. at 771. See also State v. Krause, 168 Wis. 2d 578, 588, 484 N.W.2d 347 (Ct. App. 1992) ("Krause asserts, however, that his refusal still is constitutionally protected because he told Officer Dornfeld that he 'didn't believe in needles' and 'd[id]n't want AIDS.' This argument fails. These isolated comments do not establish that Krause is 'one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing' whose wishes the Schmerber Court declined to address."). Consequently, the fourth factor speaks to the reasonableness of the type of search employed, not whether a warrant was required to conduct the search. As such, to say that Howes made no objection to the type of search is not to say that Howes impliedly consented to being searched. Each inquiry is analytically distinct.

arrested Howes based on probable cause that Howes had driven with a prohibited alcohol concentration, i.e., 0.02 percent or higher. Next, we must determine whether exigent circumstances existed such that the deputy was justified in proceeding without a warrant.

### C. Probable Cause to Arrest

¶27 With respect to the probable cause analysis, the deputy in this case arrested Howes; therefore, the dispositive inquiry is whether the deputy had probable cause to conduct this arrest. We conclude that the deputy had probable cause to arrest Howes for operation of a vehicle with a prohibited alcohol concentration under the facts as found by the circuit court.

¶28 "Warrantless arrests are unlawful unless they are supported by probable cause." State v. Blatterman, 2015 WI 46, ¶34, 362 Wis. 2d 138, 864 N.W.2d 26. "Probable cause to arrest ... refers to that quantum of evidence within the arresting officer's knowledge at the time of the arrest that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle [at a prohibited alcohol concentration]." Id. (quoting State v. Lange, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551). "The burden is on the state to show [it] had probable cause to arrest." Id. (internal quotation marks omitted). And, "[w]e evaluate the existence of probable cause objectively, concerned with whether law enforcement acted reasonably." Robinson, 327 Wis. 2d 302, ¶26.

¶29 We look at the "totality of the circumstances to determine whether probable cause . . . existed." Tullberg, 359 Wis. 2d 421, ¶33. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). "This standard is case-specific: '[t]he quantum of information which constitutes probable cause to arrest must be measured by the facts of the particular case.'" Blatterman, 362 Wis. 2d 138, ¶35 (quoting State v. Paszek, 50 Wis. 2d 619, 625, 184 N.W.2d 836 (1971)).

¶30 A number of factors may be relevant to a determination of probable cause in the context of an arrest for a drunk-driving related offense. As we have previously detailed, "factors sufficient to support a finding of probable cause have included bloodshot eyes, an odor of intoxicants, and slurred speech, together with a motor vehicle accident or erratic driving." Kennedy, 359 Wis. 2d 454, ¶22.

¶31 Additionally, "[p]olice may properly consider prior convictions in a probable cause determination." Blatterman, 362 Wis. 2d 138, ¶36; see also State v. Goss, 2011 WI 104, ¶24, 338 Wis. 2d 72, 806 N.W.2d 918. "Prior convictions are especially relevant in this case because the statute reduced the PAC threshold applicable to [the defendant] from 0.08% to 0.02% alcohol concentration." Blatterman, 362 Wis. 2d 138, ¶36.

14

¶32 In this case, the deputy checked Howes' driving record, which indicated that Howes had three prior OWI/PAC convictions. This lowered Howes' PAC threshold to 0.02 percent. The circuit court properly found this highly relevant in determining that the deputy had probable cause to arrest Howes.

¶33 Moreover, three people told the deputy that Howes smelled of intoxicants: (1) an individual at the scene of the accident; (2) one of the EMTs who rode in the ambulance with Howes; and (3) a nurse at the hospital. Taken together with the vehicle accident, these facts were sufficient to provide the deputy with probable cause to arrest Howes for operating a vehicle with a prohibited alcohol concentration.

¶34 We note that probable cause in this case developed over a period of time. At the accident scene, one bystander mentioned that Howes may have smelled of intoxicants. While on his way to the hospital, the deputy learned that Howes' PAC threshold had been lowered to 0.02 percent because of his prior convictions for OWI/PAC. Then, at the hospital, the deputy spoke with EMT personnel, one of whom said that Howes smelled of intoxicants and later he spoke with a nurse who also said that Howes smelled of intoxicants. At that point, the deputy reasonably believed that he had probable cause to conclude that Howes had operated his motorcycle with a prohibited alcohol concentration of 0.02 percent. He then placed Howes under arrest. We agree that the deputy had probable cause to believe that Howes had violated Wis. Stat. § 346.63(1)(b) under the provisions of Wis. Stat. § 340.01(46m)(c).

15

### D.  Exigent Circumstances

¶35  We next examine whether the warrantless blood draw was justified by exigent circumstances.  To determine if a warrantless blood draw was permissible under the Fourth Amendment, we look at the totality of the circumstances and engage in a "careful case-by-case assessment of exigency." McNeely, 133 S. Ct. at 1561.

¶36  "Like our analysis of probable cause, the test for determining the existence of exigent circumstances is an objective one."  Tullberg, 359 Wis. 2d 421, ¶41 (quoting Robinson, 327 Wis. 2d 302, ¶30).  It follows that we give no weight to the subjective belief of an officer.[9]  See United States v. Richardson, 208 F.3d 626, 629 (7th Cir. 2000) (reasoning "a police officer's subjective belief that exigent circumstances exist is insufficient to make a warrantless search.  Instead, as is normally the case for Fourth Amendment inquiries, the test is objective . . . .").  Accordingly, we independently examine the facts known to the officer at the time of the warrantless search.

¶37  An officer is justified in conducting a warrantless search to prevent the destruction of evidence.  And, "[e]vidence of a crime is destroyed as alcohol is eliminated from the bloodstream of a drunken driver."  Tullberg, 359 Wis. 2d 421, ¶42.  While the natural dissipation of alcohol is not, under all

---

[9] Accordingly, the deputy's testimony that he had time to obtain a warrant in this case is irrelevant to our analysis.

16

circumstances, an exigent circumstance sufficient to allow an officer to conduct a warrantless blood draw, there are situations in which the totality of the circumstances would justify such a search.  "[A] warrantless blood draw [need not] always require a 'now or never' situation in order to be justified by exigent circumstances.   Rather, exigent circumstances justify a warrantless blood draw if delaying the blood draw would 'significantly undermin[e] [its] efficacy.'" Id., ¶50 (quoting McNeely, 133 S. Ct. at 1561); cf. State v. Parisi, 2016 WI 10, ¶40, 367 Wis. 2d 1, 875 N.W.2d 619 ("Under the circumstances, Officer Fenhouse might reasonably have feared that if he attempted to obtain a warrant before drawing Parisi's blood, Parisi's condition could again lapse, causing Officer Fenhouse to miss his window of opportunity.").

¶38 The United States Supreme Court's decision in Schmerber v. California, 384 U.S. 757 (1966), illustrates a circumstance in which a warrantless blood draw in the context of a drunk-driving offense is reasonable.   In Schmerber, an individual was "arrested at a hospital while receiving treatment for injuries suffered in an accident involving the automobile that he had apparently been driving."  Id. at 758.  Without obtaining a warrant, the officer instructed a physician at the hospital to draw the defendant's blood.  Id.  "The chemical analysis of this sample revealed a percent by weight of alcohol in his blood at the time of the offense which indicated intoxication, and the report of this analysis was admitted in evidence at the trial."  Id. at 759.  The defendant objected to

17

the admission of the report and contended, in part, that these results "should be excluded from evidence as the product of an unlawful search and seizure in violation of the Fourth and Fourteenth Amendments." Id. at 766.

¶39 The United States Supreme Court rejected the defendant's contention that the warrantless blood draw was unreasonable and concluded that the officer's search was justified by exigent circumstances. Id. at 770. The Court, in part, premised its decision on the defendant's injuries that had delayed the officer's ability to secure a blood draw from the defendant. Specifically, the Court reasoned:

> We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

Id. at 770-71. Consequently, the Court surmised that "[t]he officer . . . might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence." Id. (internal quotation marks omitted).

¶40 Following Schmerber, the Supreme Court in McNeely reaffirmed the principle that dissipation of alcohol from the blood stream may lead to the destruction of evidence, and

18

therefore constitute an exigent circumstance sufficient to justify a warrantless blood draw. McNeely, 133 S. Ct. at 1560 (reasoning, "our analysis in Schmerber fits comfortably within our case law applying the exigent circumstances exception."). The Court clarified that its decision in Schmerber was not predicated solely on the natural dissipation of alcohol from the bloodstream; rather, there were "special facts" that made the blood draw reasonable under the totality of circumstances present in Schmerber. Id. These "special facts" were that the defendant was injured and in the hospital, and that the officer had to investigate the scene of the accident. The Court reasoned,

> Regardless of the exact elimination rate, it is sufficient for our purposes to note that because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results. This fact was essential to our holding in Schmerber, as we recognized that, under the circumstances, further delay in order to secure a warrant after the time spent investigating the scene of the accident and transporting the injured suspect to the hospital to receive treatment would have threatened the destruction of evidence.

Id. at 1560-61. These facts made the officer's need to draw blood more urgent and, given this urgency, the officer's actions were justified under the exigent circumstances doctrine. Id. at 1560 ("We added that '[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time

19

to seek out a magistrate and secure a warrant.'" (quoting Schmerber, 384 U.S. at 770-71).

¶41 Moreover, we note that our decision is consistent with the Supreme Court's narrow holding in McNeely that dissipation of alcohol from the bloodstream, standing alone, does not always constitute an exigent circumstance. The Supreme Court in McNeely did not simultaneously create that which it sought to eradicate. Stated otherwise, McNeely did not create a per se rule that a warrantless blood draw based on the natural dissipation of alcohol from the blood stream is never reasonable. Id. at 1568 ("The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case.").

¶42 Instead, the Court in McNeely validated the foundation of its decision in Schmerber; specifically, dissipation of alcohol from the bloodstream may justify an officer's warrantless blood draw. The Court in McNeely went so far as to recognize that delay in obtaining a warrant, even without the presence of extraneous factors, may justify a warrantless blood draw. The Court stated, "an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." Id. at 1561; see also id. at 1568 ("No doubt, given the large number of arrests for this offense in different

20

jurisdictions nationwide, cases will arise when anticipated delays in obtaining a warrant will justify a blood test without judicial authorization, for in every case the law must be concerned that evidence is being destroyed.").

¶43 As is evident from the Court's analysis in Schmerber and McNeely, certain facts are particularly relevant to an exigent circumstances analysis in drunk-driving cases. Whether an officer was delayed in obtaining a blood draw due to the defendant's medical condition is one such fact. Additionally, whether the officer was delayed because time had to be taken to investigate the scene of the accident is also highly relevant. See Birchfield v. North Dakota, 136 S. Ct. 2160, 2174 (2016) ("On the specific facts of [Schmerber], where time had already been lost taking the driver to the hospital and investigating the accident, the Court found no Fourth Amendment violation even though the warrantless blood draw took place over the driver's objection.").

¶44 The Minnesota Supreme Court, relying on these factors, concluded that exigent circumstances justified a search under circumstances similar to that of Schmerber. See Minnesota v. Stavish, 868 N.W.2d 670, 676-77 (Minn. 2015). In Stavish, the Minnesota Supreme Court concluded that, under the totality of circumstances, a warrantless blood draw of a hospitalized individual was justified by exigent circumstances. The Court reasoned, "Stavish's medical condition and need for treatment rendered his future availability for a blood draw uncertain. [The officer] did not know how long Stavish was likely to remain

21

at the same hospital or whether further medical care would preclude obtaining a sample even if Stavish stayed at the same hospital." Id. at 678. As a result, "it was objectively reasonable for [the officer] to conclude that he was faced with an emergency in which the delay necessary to obtain a warrant threatened the destruction of evidence." Id.

¶45 The circumstances of a critically injured driver who needed immediate medical care that justified the warrantless blood draw in Schmerber and Stavish are present in the case at hand. And in addition, Howes' prohibited alcohol concentration threshold of 0.02 percent increased the need for a prompt blood draw. Dissipation or dilution of alcohol in his bloodstream due to the passage of time and medical treatments threatened the State's ability to prove the crime for which he was arrested. This is so because "[a]lcohol dissipates from the bloodstream at a rate of 0.01 percent to 0.025 percent per hour." McNeely, 133 S. Ct. at 1570-71 (Roberts, C.J., concurring in part and dissenting in part) (citing Richard Stripp, Forensic and Clinical Issues in Alcohol Analysis, in Forensic Chemistry Handbook 440 (Lawrence Kobilinsky ed., 2012)). If Howes violated his restricted PAC with a blood alcohol concentration of 0.02 percent, it would take approximately an hour for Howes' blood alcohol level to go to 0.00 percent. This is roughly the amount of time that elapsed between Howes' accident and the time in which the deputy first had probable cause necessary to obtain a warrant. As each minute passed, the likelihood that Howes' blood alcohol level would diminish to 0.00 percent increased

22

significantly. At 0.00 percent, it would be impossible to calculate what his blood alcohol level was at the time of the accident.

¶46 In addition, similar to the officer in Schmerber, the deputy's responsibilities at the accident scene led to a significant delay in the ability of the deputy to obtain a blood draw. For example, he was required to secure evidence relating to the accident and ensure the safety of those traveling on roads through the scene of the accident. The investigation of the accident took time. During this time, reliable evidence of Howes' blood alcohol concentration was being destroyed by the passage of time and treatment at the hospital.[10]

¶47 Furthermore, akin to the defendant in Schmerber, Howes was in critical condition. The severity of Howes' condition made the deputy's ability to obtain a blood draw in the future uncertain. This uncertainty was exacerbated because at least one hour already had passed since the accident and the deputy had no knowledge about the time at which Howes stopped drinking.

¶48 Howes was unconscious, and it was unknown whether he had suffered brain damage. Importantly, a physician indicated

---

[10] Howes was in critical condition that required additional testing, intubation to support his respiration. He had been given medication resulting in "heavy sedation," and because he was unconscious, he must have received this medication intravenously.

23

that Howes would need a CT scan.[11] The deputy could reasonably have concluded that waiting for a CT scan before obtaining a blood draw would "significantly undermin[e] the efficacy" of the blood analysis to prove Howes violated his PAC threshold of 0.02 percent. See Tullberg, 359 Wis. 2d 421, ¶50 n.26 (quoting McNeely, 133 S. Ct. at 1561).

¶49 Additionally, as we have explained, the deputy did not have probable cause to arrest Howes until he arrived at the hospital, talked with EMTs and talked with the nurse who told him that she also smelled alcohol. Accordingly, the present case is not one in which the officer could have obtained a warrant on the way to the hospital because he did not have probable cause to obtain a warrant then. Applying for a warrant after his conversations with Howes' care-givers would have led to additional delay and the further dissipation of alcohol from Howes' bloodstream. See id., 359 Wis. 2d 421, ¶48 n.25 ("We note that Deputy Hoffman could not have had other officers assist him in obtaining a warrant while he investigated the accident because he did not have probable cause to have Tullberg's blood drawn until immediately before it was drawn.").

¶50 Accordingly, we conclude that the warrantless blood draw from Howes was permissible under the Fourth Amendment of

---

[11] The deputy asked hospital staff to conduct a blood draw, but they were unable to draw Howes' blood until roughly an hour after the deputy's request. This passage of time is further evidence that the deputy needed to request a blood draw immediately.

24

the United States Constitution and Article I, Section 11 of the Wisconsin Constitution because under the totality of circumstances the exigent circumstance of destruction of evidence existed.

## III. CONCLUSION

¶51 We conclude that the circuit court correctly determined that the deputy had probable cause to arrest Howes for operating a vehicle with a PAC, and that Howes was arrested prior to obtaining a blood sample. Moreover, based on the totality of circumstances herein, the deputy's warrantless search was permissible under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution under the exigent circumstances doctrine that relates to the risk of destruction of evidence. Stated more fully, under the totality of circumstances presented herein, which included a seriously injured, unconscious person, who was being subjected to medical treatments for his injuries and who had 0.02 percent as his PAC threshold, a reasonable officer could have concluded that further delay in drawing Howes' blood would have led to the destruction of evidence through the dissipation and dilution of alcohol in Howes' bloodstream. Therefore, we reverse the order of the circuit court and remand for further proceedings.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

¶52 MICHAEL J. GABLEMAN, J. *(concurring in the judgment).* I agree that the blood draw here was a permissible warrantless search under the Fourth Amendment, and I concur in the mandate of the court. However, rather than addressing this case as one of exigent circumstances, I would decide the question certified to us by the court of appeals: whether provisions in Wisconsin's implied consent law authorizing a warrantless blood draw from an unconscious driver based on the driver's implied consent are unconstitutional under the Fourth Amendment to the United States Constitution.

¶53 Wisconsin's implied consent law, Wis. Stat. § 343.305, provides notice to all drivers that when they operate a motor vehicle in this state, they are deemed to have consented to blood, breath, or urine testing for the presence of alcohol or controlled substances, § 343.305(2),[1] if and when such testing is

---

[1] Wis. Stat. § 343.305(2) provides, in full:

IMPLIED CONSENT. Any person who is on duty time with respect to a commercial motor vehicle or drives or operates a motor vehicle upon the public highways of this state, or in those areas enumerated in s. 346.61, is deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol, controlled substances, controlled substance analogs or other drugs, or any combination of alcohol, controlled substances, controlled substance analogs and other drugs, when requested to do so by a law enforcement officer under sub. (3)(a) or (am) or when required to do so under sub. (3)(ar) or (b). Any such tests shall be administered upon the request of a law enforcement officer. The law enforcement agency by which the
(continued)

1

required by a law enforcement officer under certain circumstances, including when the driver is arrested for one of certain enumerated intoxicated-driving offenses, § 343.305(3).[2] It further provides that a driver "who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent" and a test may therefore be administered. See § 343.305(3)(ar)-(b).[3]

---

officer is employed shall be prepared to administer, either at its agency or any other agency or facility, 2 of the 3 tests under sub. (3)(a), (am), or (ar), and may designate which of the tests shall be administered first.

[2] Wis. Stat. § 343.305(3)(a) provides, in relevant part:

Upon arrest of a person for violation of s. 346.63(1), (2m) or (5) or a local ordinance in conformity therewith, or for a violation of s. 346.63(2) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, or upon arrest subsequent to a refusal under par. (ar), a law enforcement officer may request the person to provide one or more samples of his or her breath, blood or urine for the purpose specified under sub. (2).

Subsection (3)(am) includes similar provisions that apply when the "officer detects any presence of alcohol . . . on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe the person is violating or has violated s. 346.63(7)."

[3] Wis. Stat. § 343.305(3)(ar)1. applies if "a person is the operator of a vehicle that is involved in an accident that causes substantial bodily harm, as defined in s. 939.22(38), to any person, and a law enforcement officer detects any presence of alcohol, a controlled substance, a controlled substance analog or other drug, or a combination thereof." Subsection (3)(ar)2. applies if "a person is the operator of a vehicle that is involved in an accident that causes the death of or great bodily harm to any person and the law enforcement officer has reason to believe that the person violated any state or local traffic law." Both provisions provide that a "person who is

(continued)

2

¶54 In this case, a warrantless blood draw was taken from the defendant, David W. Howes, while he was unconscious. Howes had been involved in a motorcycle accident with a deer, and he was found injured, unconscious, and smelling of alcohol. Howes was still unconscious when a sheriff's deputy later arrested him at the hospital on suspicion of drunk driving. Following the procedures set forth in the implied consent law, the deputy asked the hospital to take a blood sample from Howes,[4] and the test results revealed the presence of a prohibited alcohol concentration. Howes was charged with operating a motor vehicle while intoxicated, in violation of Wis. Stat. § 346.63(1)(a),

---

unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subdivision and one or more samples specified in par. (a) or (am) may be administered to the person." Wis. Stat. § 343.305(3)(ar)1.-2.

Additionally, Wis. Stat. § 343.305(3)(b) provides, in full:

A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection, and if a law enforcement officer has probable cause to believe that the person has violated s. 346.63(1), (2m) or (5) or a local ordinance in conformity therewith, or s. 346.63(2) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, or detects any presence of alcohol, controlled substance, controlled substance analog or other drug, or a combination thereof, on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe the person has violated s. 346.63(7), one or more samples specified in par. (a) or (am) may be administered to the person.

[4] This situation was governed by Wis. Stat. § 343.305(3)(b), because the deputy had probable cause to believe Howes was guilty of operating a motor vehicle with a prohibited alcohol concentration, in violation of Wis. Stat. § 346.63(1)(b).

3

and operating a motor vehicle with a prohibited alcohol concentration, in violation of § 346.63(1)(b).

¶55 The circuit court suppressed the test results, ruling that subsections (3)(ar) and (3)(b) of the implied consent law are facially unconstitutional under the Fourth Amendment to the extent they authorize warrantless testing of unconscious drivers in the absence of exigent circumstances.[5] The circuit court rejected the argument that Howes consented, concluding that "[t]here can be no consent in the constitutional sense where somebody is unconscious and incapable of giving consent." The State appealed, and the court of appeals certified the case to this court pursuant to Wis. Stat. § (Rule) 809.61.

¶56 On appeal, Howes takes the position that the circuit court was correct to find the unconscious-driver provisions facially unconstitutional.[6] Howes argues that, absent an established exception to the Fourth Amendment's warrant requirement, officers must obtain a warrant before ordering a

---

[5] I will refer to these provisions collectively as the "unconscious-driver provisions" of the implied consent law.

[6] This case also presents an as-applied challenge to the statute, but Howes does not develop any distinct argument to support his as-applied challenge. Rather, he states that his challenge is "as-applied only insofar as his Fourth Amendment rights were personally violated by the State's conduct under the general auspices of the provisions in question when the blood draw was performed." Howes "does not believe that any variation in the circumstances (except for the crucial one——incapacitation, which brings him within the purview of the provision in the first place) would materially affect the analysis." Therefore, if the unconscious-driver provisions can be constitutionally applied, Howes does not dispute that they were constitutionally applied to him.

blood test of a driver who is unconscious or otherwise not capable of withdrawing consent. Howes further argues that the statutory provisions authorizing blood tests of such drivers based on their implied consent create an unreasonable per se exception to the warrant requirement.

¶57 I conclude that Howes has not met his burden of proving beyond a reasonable doubt that the unconscious-driver provisions of the implied consent law are unconstitutional. Voluntary consent to testing may be implied from the conduct of driving with notice of the conditions of Wisconsin's implied consent law, and such consent continues unless it is revoked. Therefore, I conclude that the circuit court erred in striking down the statute as facially unconstitutional and in suppressing the results of the blood test.

¶58 I begin with the applicable standard of review and with a general overview of Wisconsin's implied consent law, focusing on the challenged unconscious-driver provisions. I then apply the principles of the Fourth Amendment to the unconscious-driver provisions in light of Howes' argument that they are facially unconstitutional.

## I. STANDARD OF REVIEW

¶59 Whether a statute is constitutional is a question of law that this court reviews de novo. Dane Cty. DHS v. P.P., 2005 WI 32, ¶14, 279 Wis. 2d 169, 694 N.W.2d 344. Statutes are presumed to be constitutional. Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶18, 237 Wis. 2d 99, 613 N.W.2d 849. "The court indulges every presumption to sustain

5

the law if at all possible, and if any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality." Id. The burden is on the challenger to "prove that the statute is unconstitutional beyond a reasonable doubt." State v. Cole, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328. Here, because Howes presents his argument as a facial challenge to the unconscious-driver provisions, the burden is on him to prove beyond a reasonable doubt that the statute "cannot be constitutionally enforced under any circumstances." See Society Ins. v. LIRC, 2010 WI 68, ¶26, 326 Wis. 2d 444, 786 N.W.2d 385 (citing State v. Wood, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63).

## II. OVERVIEW OF WISCONSIN'S IMPLIED CONSENT LAW

¶60 Wisconsin's implied consent law was first enacted in 1969 and is codified at Wis. Stat. § 343.305. "The purpose behind the implied consent law is to combat drunk driving by 'facilit[ating] the gathering of evidence against drunk drivers.'" State v. Piddington, 2001 WI 24, ¶17, 241 Wis. 2d 754, 623 N.W.2d 528 (quoting State v. Neitzel, 95 Wis. 2d 191, 203, 289 N.W.2d 828 (1980)). Like every one of our forty-nine sister states, Wisconsin has chosen to combat the problem of drunken and impaired driving by enacting an implied consent law, such that consenting to testing has long been "a condition of the privilege of operating a motor vehicle upon state highways." State v. Zielke, 137 Wis. 2d 39, 48, 403 N.W.2d 427 (1987).

6

¶61 The implied consent law provides that a driver is deemed to have consented, in certain circumstances, to testing of his or her blood, breath, or urine for the presence of alcohol or other controlled substances. Wis. Stat. § 343.305(2). Specifically, it provides that anyone who "drives or operates a motor vehicle upon the public highways of this state" is "deemed" to have consented to testing when required by a law enforcement officer under the specific circumstances enumerated in the statute. Id.

¶62 Although the statute acknowledges that a person may withdraw consent and refuse to submit to testing, a driver has no statutory or constitutional right to refuse without consequences. See State v. Crandall, 133 Wis. 2d 251, 255-56, 394 N.W.2d 905 (1986). Nor does the statute provide that officers must ask drivers whether they want to refuse testing. "This statutory scheme does not contemplate a choice, but rather establishes that a defendant will suffer the consequences of revocation should he refuse to submit to the test after having given his implied consent to do so." Milwaukee Cty. v. Proegler, 95 Wis. 2d 614, 624, 291 N.W.2d 608 (Ct. App. 1980).

¶63 The occasions on which drivers are deemed to have consented to testing are limited to particular circumstances where the legislature has decided that such testing is necessary to combat intoxicated driving and to protect public safety. See Piddington, 241 Wis. 2d 754, ¶42 ("The implied consent law is based upon the legitimate government interest of protecting the public welfare, to wit, removing drunk drivers from the road."

7

(citing Proegler, 95 Wis. 2d at 631)). For example, a driver is deemed to have consented to testing upon arrest, but only if the offense for which the driver is arrested is one of certain enumerated intoxicated-driving offenses under Wis. Stat. § 346.63 or certain other offenses involving injury or homicide by intoxicated use of a vehicle. See Wis. Stat. § 343.305(3)(a). If none of the statutory circumstances exist, testing pursuant to the implied consent law is not permitted, though officers may still procure evidence through "any other lawful means." § 343.305(3)(c).

### III.  THE UNCONSCIOUS-DRIVER PROVISIONS

¶64 The unconscious-driver provisions of the implied consent law provide that, under certain circumstances, a driver "who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent." See Wis. Stat. § 343.305(3)(ar)-(b). Provided the other relevant statutory conditions are met, law enforcement may presume that an unconscious driver consents to the tests that are set forth in the statute, unless consent is revoked. The statute contains no requirement that any driver, whether conscious or not, must expressly consent to testing; consent is deemed to have been given when the person voluntarily chose to drive on Wisconsin highways. See § 343.305(2).

¶65 Indeed, the informational statement that officers must read to a driver before administering the test is a notice of the consequences of refusal, not a "request" for consent. See Wis. Stat. § 343.305(4). The purpose of this notice is to

8

advise drivers about the nature of their implied consent, not necessarily to provide a meaningful opportunity to decide whether to withdraw their consent. See Piddington, 241 Wis. 2d 754, ¶¶17, 20, 55 (holding that an analysis of the proper administration of the notice focuses on the objectively reasonable conduct of the officer, not "[w]hether the accused driver has actually comprehended the warnings"). "The entire tenor of the implied consent law is . . . that consent has already been given . . . ." Neitzel, 95 Wis. 2d at 203.

¶66 To summarize, the unconscious-driver provisions of the implied consent law put every driver on notice that, in the event he or she becomes unconscious and, for example, an officer has probable cause to believe the driver is guilty of a drunk-driving offense, the driver's previously given consent would remain unrevoked. I turn now to the question of whether Howes has met his burden to prove beyond a reasonable doubt that these provisions are unconstitutional.

## IV. APPLICABLE FOURTH AMENDMENT PRINCIPLES

¶67 The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Courts will presume that a search was unreasonable if the officers did not have a warrant, but "[i]t is well established that a search is reasonable when the subject consents." Birchfield v. N. Dakota, 136 S. Ct. 2160, 2185 (2016). Specifically in the context of state implied consent laws, the Supreme Court has emphasized

9

that "consent to a search need not be express but may be fairly inferred from context." Id. This court has likewise recognized that "[c]onsent to search need not be given verbally; it may be in the form of words, gesture, or conduct." State v. Phillips, 218 Wis. 2d 180, 197, 577 N.W.2d 794 (1998).

### A. Consent May Be Implied By Conduct

¶68 The principle of consent by conduct is neither new nor infrequently applied. In his treatise on the Fourth Amendment, Professor Wayne LaFave provides a number of examples in which "it is said that consent is 'implied' because it is found to exist merely because of the person's conduct in engaging in a certain activity." 4 Wayne R. LaFave, Search and Seizure § 8.2(l), at 162-63 (5th ed. 2012). For example, "a warrantless search of a person seeking to enter a military base may be deemed reasonable based on the implied consent of the person searched," Morgan v. United States, 323 F.3d 776, 778 (9th Cir. 2003), and consent "may be implied from [the] act of driving past the guard shack and onto [the base] and imputed from the posted notice indicating that entry onto [the base] constituted consent to a search," State v. Torres, 262 P.3d 1006, 1022 (Haw. 2011). Another analogous situation concerns a "business owner in a highly regulated or licensed industry" who "in effect consents to the restrictions put in place by the government."

10

United States v. Hamad, 809 F.3d 898, 905 (7th Cir. 2016).[7] Similarly, some courts have justified airport screening searches based on implied consent, reasoning that "[t]he signs in the terminal gave [passengers] fair notice that if in the course of the total screening process a physical inspection of [their] hand luggage should be considered necessary . . . [they] could be required to submit to it . . . ." United States v. DeAngelo, 584 F.2d 46, 47-48 (4th Cir. 1978); see State v. Hanson, 34 P.3d 1, 4-7 (Haw. 2001) (collecting cases).[8]

### B.   The Limits of Implying Consent By Conduct

¶69 Of course, there must be a limit to the scope of the consent that may be implied by a person's conduct. See Birchfield, 136 S. Ct. at 2185. Consent "cannot be said to exist merely because a person (a) knows that an official intrusion into his privacy is contemplated if he does a certain thing, and then (b) proceeds to do that thing." LaFave, supra, at 164-65 (emphasis added). A reviewing court must also

---

[7] Although the cases involving warrantless inspections of highly regulated businesses do not rely on consent as the basis for the reasonableness of such searches, the rationale in those cases is analogous in that the inspections are reasonable in part because a business owner chooses to enter the regulated field and the government regulations supply notice of the scope and frequency of inspections. See United States v. Biswell, 406 U.S. 311, 316 (1972).

[8] Some more recent decisions hold that consent is not required at all in the airport screening context, because such searches are reasonable under the administrative search doctrine. See, e.g., United States v. Aukai, 497 F.3d 955, 960 (9th Cir. 2007); United States v. Hartwell, 436 F.3d 174, 178-81 (3d Cir. 2006).

11

consider the scope and the voluntariness of the individuals' consent under the particular implied consent scheme presented. See, e.g., Birchfield, 136 S. Ct. at 2186 (remanding to state court to revisit voluntariness of consent, in light of holding that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense").

¶70 A federal case out of the Seventh Circuit is helpful in illustrating how both the scope and the voluntary nature of the consent implied by conduct are evaluated by what is reasonable under the particular circumstances. Where a parking lot for government employees had signs posted stating that all vehicles were "subject to search," the mere conduct of parking in the lot did not imply consent to a sudden, unprecedented search of all vehicles because the vague signs gave no reason to expect such a singular suspicionless search. McGann v. Ne. Ill. Reg'l Commuter R.R. Corp., 8 F.3d 1174, 1176, 1182-83 (7th Cir. 1993); see also State v. Iaccarino, 767 So.2d 470, 477 (Fla. Dist. Ct. App. 2000) (holding that implied consent to searches at festival entrance did not extend to intrusive drug searches, because a "reasonable person would conclude from the signs posted at the gate that the search was limited to cans, bottles, and the contents of coolers or backpacks, . . . [not] wallets, pockets, and underwear").

## V. APPLICATION

¶71 I now apply these principles to the unconscious-driver provisions of Wisconsin's implied consent law, in light of Howes' arguments. Howes argues that, under the Supreme Court's

12

recent decisions in Missouri v. McNeely, 133 S. Ct. 1552 (2013), and Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), authorizing warrantless blood tests of unconscious drivers based solely on their implied consent creates an unreasonable per se exception to the warrant requirement. I therefore address McNeely and Birchfield to explain why they do not support the result that Howes suggests. I then examine the reasonableness of the law's presumption that a person has impliedly consented to testing while unconscious, and I conclude that it does not violate the Fourth Amendment.

### A. McNeely and Birchfield

¶72 In McNeely, the Supreme Court held that the natural dissipation of alcohol in the bloodstream does not constitute a per se exigency that always justifies a warrantless blood draw. McNeely, 133 S. Ct. at 1563. Although Howes points to broad language in McNeely that emphasizes the intrusive nature of a blood draw and the need for an examination of the totality of the circumstances, the holding in McNeely is limited only to the question of exigent circumstances. The McNeely Court "pointedly did not address" any other exceptions to the warrant requirement. Birchfield, 136 S. Ct. at 2174. Here, the State does not ground its argument in exigent circumstances, but rather bases its case entirely upon the consent exception to the warrant requirement. So, put simply, McNeely is inapplicable to the question before us, that is, whether the unconscious-driver provisions of Wisconsin's implied consent law are unconstitutional.

13

¶73 With Birchfield, we get closer to the mark. In Birchfield, the Supreme Court held, inter alia, that it was unreasonable to deem a driver "to have consented to submit to a blood test on pain of committing a criminal offense." Birchfield, 136 S. Ct. at 2186. But Wisconsin's implied consent law does not threaten the criminal penalties that Birchfield disapproved; instead, the result of refusal is that the officer shall "prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege." Wis. Stat. § 343.305(9)(a). A court-ordered revocation under § 343.305(10) is not a criminal penalty.[9] Therefore, nothing in Birchfield undermines the longstanding provisions of Wisconsin's implied consent law.

¶74 On the contrary, the Supreme Court stated in Birchfield that "[i]t is well established that a search is reasonable when the subject consents, and that sometimes consent to a search need not be express but may be fairly inferred from context." Birchfield, 136 S. Ct. at 2185 (citations omitted).

---

[9] A revocation under Wis. Stat. § 343.305(10) has other consequences, but they are not criminal penalties for the withdrawal of consent. For example, Wis. Stat. § 343.307(1)(f) provides that a revocation under § 343.305(10) is counted in determining the penalty for operating a motor vehicle while intoxicated in violation of Wis. Stat. § 346.63(1). But that penalty is imposed only on the subsequent criminal offense of drunk driving, not on the earlier withdrawal of consent to testing under the implied consent law. Unlike the North Dakota law at issue in Birchfield, which made the refusal itself a misdemeanor in the first instance, see Birchfield, 136 S. Ct. at 2170-71, a person's withdrawal of consent to a blood test under Wisconsin's implied consent law is not a criminal offense.

14

The Court continued, "Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." Id. (emphasis added) (citations omitted). Far from disapproving the concept of consent by conduct within the context of a driver's implied consent, the Court expressly endorsed the general validity of state implied consent laws that infer motorists' consent to testing from the conduct of driving.

## B. Drivers in Wisconsin Consent to Testing By Choosing to Drive With Notice of Their Responsibilities

¶75 Howes argues that it is unreasonable to presume that a driver has consented to testing merely by the conduct of driving on state highways. However, the understanding that a driver's voluntary consent to testing of blood, breath, or urine is validly implied by the conduct of driving has been consistently recognized in this court's cases. See, e.g., Zielke, 137 Wis. 2d at 48 ("The consent is implied as a condition of the privilege of operating a motor vehicle upon state highways."); Neitzel, 95 Wis. 2d at 203 ("The entire tenor of the implied consent law is . . . that consent has already been given . . . ."). In Neitzel, we concluded that an arrestee does not have a statutory right to consult with counsel about whether to refuse testing, because "a lawyer cannot induce his client to recant a consent previously given knowingly and voluntarily."

15

Neitzel, 95 Wis. 2d at 201 (emphasis added). At the time the defendant chose to drive, "he was fully cognizant of his rights and was deemed to know that, in the event he was later arrested for drunken driving, he had consented . . . to chemical testing under the circumstances envisaged by the statute." Id. Put simply, consent to testing had already been given, and it remained valid until withdrawn.[10]

¶76 Inferring consent to testing from the conduct of driving appears essential to the validity of the warrantless blood test that occurred in State v. Disch, 129 Wis. 2d 225, 385 N.W.2d 140 (1986), where this court upheld a blood test of a driver who was "in a stupor" and "did not seem able to concentrate." Id. at 236. The only basis for this ruling was the same statutory language that Howes now challenges. See id. at 236-38. Therefore, unless this court has had a sudden change of heart unsignaled over the course of the past thirty years of

---

[10] Howes argues that a recent court of appeals decision, State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, stands for the contrary proposition. In Padley, the court of appeals rejected "the State's incorrect view that . . . 'implied consent' alone can 'serve as a valid exception to the warrant requirement.'" Id., ¶37. However, Padley did not cite authority for its rejection of the validity of a driver's implied consent as an exception to the warrant requirement, nor was such a conclusion necessary to decide the case, because the driver in Padley consented expressly. See id., ¶11. I reject Padley's view as having no basis in law and as inconsistent with the Supreme Court's analysis of a state implied consent law under the principle that "consent to a search need not be express but may be fairly inferred from context." Birchfield, 136 S. Ct. at 2185.

16

its jurisprudence on the implied consent law, it would appear that Howes should receive the same result that Disch received.

¶77 Wisconsin is not the only jurisdiction to recognize that consent to testing is implied when a person operates a motor vehicle and continues until it is revoked. The Idaho Supreme Court recognizes that drivers "give their initial consent to evidentiary testing by driving on Idaho roads voluntarily," and such consent will "qualify as voluntary" so long as the driver "continue[s] to give voluntary consent." State v. Wulff, 337 P.3d 575, 582 (Idaho 2014). Applying this rule to an apparently unconscious driver, Idaho's court of appeals recognized the validity of the driver's implied consent under the Fourth Amendment, because "[t]he fact that [the driver] was allegedly unconscious when the officer read her the advisory does not effectively operate as a withdrawal of her consent." Bobeck v. Idaho Transp. Dept., 363 P.3d 861, 866-67 (Idaho Ct. App. 2015). Further, the court held that the officers had no duty "to ensure comprehension of a person who is under the influence to the point of being semi-conscious or unconscious at times." Id. at 865.

¶78 I acknowledge that other courts have found that the implied consent of an unconscious driver cannot justify a warrantless blood draw. See, e.g., People v. Arredondo, 199 Cal. Rptr. 3d 563 (Cal. Ct. App. 2016), modified on denial of reh'g (Mar. 24, 2016), review granted, 371 P.3d 240 (Cal. 2016); Bailey v. State, 790 S.E.2d 98 (Ga. App. 2016); State v. Romano, 785 S.E.2d 168 (N.C. Ct. App. 2016), review granted, 794 S.E.2d

17

315 (N.C. 2016), review granted, writ granted, 794 S.E.2d 317 (N.C. 2016); State v. Ruiz, ___ S.W.3d ___, 2015 WL 5626252 (Tex. App. Aug. 27, 2015), vacated, No. PD-1362-15, 2017 WL 430291 (Tex. Crim. App. Feb. 1, 2017) (per curiam).

¶79 At first blush, this appears to be a significant list of courts with holdings inapposite to that which I advocate today. However, the holdings in those cases all assume that McNeely (the exigent circumstances case) controls the outcome in implied consent cases. See, e.g., Bailey, 790 S.E.2d at 104 ("In light of McNeely . . . implied consent was insufficient to satisfy the Fourth Amendment . . . ."). Both as a matter of logic and in light of the relevant language in Birchfield (decided after McNeely), I fail to see how that can be the case. Because McNeely does not control as to the application of the consent exception to the warrant requirement, I reach a different conclusion than other jurisdictions do.

C. The Scope of Consent Is Reasonable

¶80 I conclude that the unconscious-driver provisions are reasonable in light of the clarity and specificity of the notice given and the strict statutory parameters for the occasion and manner of testing.

¶81 First, the notice given in the statute is clear: a test may be performed on a driver while he or she is unconscious, Wis. Stat. § 343.305(3)(ar)-(b), and continuing consent to testing is deemed to exist by virtue of the operation of a motor vehicle, § 343.305(2). A driver is "deemed to know" the conditions imposed by the implied consent law, Neitzel, 95

18

Wis. 2d at 201, and the conditions in the unconscious-driver provisions are unequivocal.

¶82 Second, the notice given is much more specific than the vague, generalized notices rejected by the Seventh Circuit in McGann and by the Florida District Court of Appeal in Iaccarino. In those cases, generic "subject to search" notices did not provide fair notice of the extensive searches actually performed, and it was therefore unreasonable to deem individuals to have consented to those searches. See McGann, 8 F.3d at 1176, 1183; Iaccarino, 767 So.2d at 477-80. But as the Florida court suggested in Iaccarino, providing a clearer and more specific notice would have been enough to establish consent. Iaccarino, 767 So.2d at 480. Here, the statute explicitly notifies all drivers that they will be deemed to have consented to the tests (not to the choice of testing or revocation), in particular circumstances specifically tailored to combating the dangers of intoxicated driving. Unlike the parking lot in McGann, where unwarned and unprecedented searches were held unreasonable based on a vague notice, the State provides notice through its statutes of its regularly performed tests, and drivers have no reason to expect otherwise.

¶83 Further, tests may be performed on an unconscious person only in specific situations. Testing may be performed if an officer has probable cause to arrest the driver, but only if the arrested offense is one of certain enumerated intoxicated-driving offenses under Wis. Stat. § 346.63 or certain other offenses involving injury or homicide by intoxicated use of a

19

vehicle. <u>See</u> Wis. Stat. § 343.305(3)(b). But if the driver has not been arrested, testing of an unconscious person is limited to cases involving an accident causing bodily harm <u>and</u> either the presence of alcohol or a violation of law. § 343.305(3)(ar)1.-2. Also, if the test is a blood test, it may be administered "only by a physician, registered nurse, medical technologist, physician assistant, phlebotomist, or other medical professional who is authorized to draw blood, or person acting under the direction of a physician." Wis. Stat. § 343.305(5)(b) (2015-16). These conditions circumscribe the scope of the testing, and testing an unconscious person outside of them requires a warrant, exigent circumstances, or "other lawful means." § 343.305(3)(c).

¶84 In the final analysis, "[i]t is the motorist who has voluntarily asserted his or her autonomy" in deciding to drive, <u>State v. Wintlend</u>, 2002 WI App 314, ¶19, 258 Wis. 2d 875, 655 N.W.2d 745, and "voluntary consent to a blood draw is not negated by the fact that consent was procured by informing a suspect that the alternative is a penalty," <u>Padley</u>, 354 Wis. 2d 545, ¶72 (citing <u>Vill. of Little Chute v. Walitalo</u>, 2002 WI App 211, 256 Wis. 2d 1032, 650 N.W.2d 891). Howes exercised his autonomy by electing to drive under the conditions all drivers in Wisconsin accept, and he has not developed——much less perfected——any argument as to why, if a driver's voluntary consent to testing may be implied from the conduct of driving, the blood test performed on him was not authorized by his implied consent.

20

## VI. CONCLUSION

¶85 No warrant is required in order to administer the tests to which a driver has impliedly consented, even if the driver is found unconscious. Voluntary consent to testing can be presumed from the decision to drive made with notice of the statutory requirements and in the absence of any expressed intent to revoke such consent. Further, this presumption that an unconscious driver does not withdraw consent is not per se unreasonable under the Fourth Amendment. Therefore, I cannot conclude that Howes has met his burden to prove beyond a reasonable doubt that the unconscious-driver provisions of the statute are facially unconstitutional and "cannot be constitutionally enforced under any circumstances." Society Ins., 326 Wis. 2d 444, ¶26. I conclude that the circuit court erred in striking down the statute as facially unconstitutional and in suppressing the results of the blood test on that basis.

¶86 For the foregoing reasons I concur.

¶87 I am authorized to state that Justice ANNETTE KINGSLAND ZIEGLER joins this concurrence.

21

¶88 DANIEL KELLY, J. *(concurring).* I join Chief Justice ROGGENSACK's opinion in toto as well as the mandate of the court. I, at the same time, join Part II of Justice ABRAHAMSON's dissent insofar as it discusses the constitutionality of Wis. Stat. §343.305(3)(b).

¶89 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* Only one question of law has been at issue in the instant case since its inception: Whether provisions of Wisconsin's implied consent law authorizing warrantless blood draws from unconscious drivers, Wis. Stat. §§ 343.305(3)(ar) and (b), are constitutional. These statutory provisions appear in Attachment 1.[1]

¶90 The constitutional inquiry into the statute's unconscious driver provisions focuses on whether statutory implied consent to a blood draw, a significant search of the person, satisfies the "consent" exception to the Fourth Amendment. This is the only Fourth Amendment issue the parties addressed in the circuit court and in their briefs and arguments in this court. This is the only Fourth Amendment issue addressed by the circuit court. This is the only issue addressed by the court of appeals in its certification memo.[2]

¶91 At the suppression hearing, the circuit court considered the only two issues presented by the parties:

---

[1] For clarity, Chief Justice Roggensack's lead opinion is joined by Justice Rebecca Grassl Bradley and Justice Daniel Kelly. Justice Gableman's concurring opinion is joined by Justice Annette Kingsland Ziegler. Justice Daniel Kelly filed a concurring opinion. This dissent is joined in its entirety by Justice Ann Walsh Bradley, and in Part II by Justice Daniel Kelly insofar as it discusses the constitutionality of Wis. Stat. § 343.305(3)(b).

[2] See State v. Howes, No. 2014AP1870-CR, certification by Wisconsin Court of Appeals (Wis. Ct. App. Jan. 28, 2016).

probable cause to arrest the defendant and the constitutionality of the Wisconsin implied consent law.

¶92 The circuit court held that there was probable cause to arrest the defendant. I agree.

¶93 After indulging every presumption to sustain the constitutionality of the statute, the circuit court concluded that the statute was unconstitutional under the Fourth Amendment: No consent in the constitutional sense can be given when the driver is unconscious and incapable of giving or withdrawing consent. I agree.

¶94 Rather than address the Fourth Amendment issue presented by the parties, the lead opinion sua sponte upholds the warrantless blood draw under the Fourth Amendment by fabricating "exigent circumstances." The lead opinion misleads the reader into believing that the circuit court addressed and decided the existence of exigent circumstances. <u>See</u> lead op., ¶2. The circuit court did not do so. In paragraph 15, the lead opinion fesses up that the circuit court merely stated without analysis that no exigent circumstances were presented by the instant case.

¶95 The lead opinion establishes the existence of "exigent circumstances" by stepping off the bench, seating itself at the counsel table as advocate for the State, and putting itself on the stand as witness for the State, thus abandoning its role as neutral decision maker. By raising and deciding the exigent circumstances exception sua sponte without giving the defendant an opportunity to present evidence or to be represented by

2

counsel, the lead opinion violates basic concepts of due process and destabilizes the adversary system at both the trial and appellate levels.[3]

¶96 Furthermore, no reasonable view of the record supports theholding that exigent circumstances justify a warrantless blood draw in the instant case. The lead opinion refuses to hold itself to the "heavy burden" it undertakes (when it acts as the State's surrogate) to rebut the presumption by clear and convincing evidence that a warrantless search of Howes is unreasonable.[4]

¶97 In essence, the lead opinion engages in an assault on Missouri v. McNeely, 133 S. Ct. 1552 (2013). McNeely caused a paradigm shift in Fourth Amendment and drunk-driving law.[5] The McNeely Court held:

---

[3] As the United State Supreme Court has explained: "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Greenlaw v. United States, 554 U.S. 237, 243-44 (2008) (citing Castro v. United States, 540 U.S. 375, 381-83 (2003)). The Court further explained: "To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a pro se litigant's rights." The defendant in the instant case is not a pro se litigant. He is represented by counsel.

[4] Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984) ("[P]olice bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests").

[5] See, e.g., State v. Tullberg, 2014 WI 134, ¶42, 359 Wis. 2d 421, 857 N.W.2d 120 (McNeely "changed the landscape of warrantless blood draws in Wisconsin").

3

- "[W]hile the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . it does not do so categorically." McNeely, 133 S. Ct. at 1563.

- A "careful case—by-case assessment of exigency" must be undertaken. McNeely, 133 S. Ct. at 1561.

- Most importantly, if law enforcement "can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." McNeely, 133 S. Ct. at 1561 (emphasis added).

¶98 These McNeely principles govern the instant case. McNeely's directive that a court engage in careful, case-by-case assessments of exigency cannot be met by way of the lead opinion's assumptions and speculation in an appellate opinion. The record does not support a case-by-case assessment of exigency in the instant case and does not support a holding that law enforcement could not have reasonably obtained a warrant before a blood sample could be drawn.

¶99 Because the lead opinion whittles away constitutional protections for the defendant and all of us under the rubric of exigent circumstances, I dissent.

¶100 I will first address the lead opinion's explication of exigent circumstances as an exception to the Fourth Amendment in the instant case. I will then address the constitutionality of the statutory implied consent under the Fourth Amendment.

I

4

¶101 At the hearing on the motion to suppress the test results from the blood draw, the State's witness, Deputy Schiro of the Dane County Sheriff's Office, was the only witness. He testified to establish probable cause and his compliance with the implied consent law.

¶102 The State did not introduce any evidence to establish exigent circumstances. Indeed, the State did not even hint that exigent circumstances may have authorized the warrantless blood draw.

¶103 The defendant has never been given notice or an opportunity to present evidence or make arguments regarding what has become the dispositive issue in the instant case——exigent circumstances. I thus conclude that the lead opinion has deprived the defendant of due process and has destabilized the adversary system at both the trial and appellate levels.

¶104 A defendant has due process rights to notice of issues to be resolved and to be heard in a meaningful way, including "a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." Washington v. Texas, 388 U.S. 14, 18 (1967) (citing In re Oliver, 333 U.S. 257, 273 (1948)).[6] The defendant's due process rights in the instant case

---

[6] Lankford v. Idaho, 500 U.S. 110, 126 (1991) ("notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure."); California v. Trombetta, 467 U.S. 479, 485 (1984) ("criminal prosecutions must comport with prevailing notions of fundamental fairness"); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313-14 (1950) (due process requires that "adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case").

to get notice, to be heard, to present a complete defense, and to have counsel have been violated.[7]

_____

[7] See In re Termination of Parental Rights to Daniel R.S., 2005 WI 160, ¶65, 286 Wis. 2d 278, 706 N.W.2d 269 ("the opportunity to be heard includes the right to 'present a complete defense'") (quoted source omitted).

"The opportunity to present arguments on the legal issue upon which a case is to be decided is fundamental to sound legal process . . . ." Bloomer v. Gibson, 912 A.2d 424, 433-34 (Vt. 2006) (citing Adam A. Milani & Michael R. Smith, Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts, 69 Tenn. L. Rev. 245 (2002)). The Bloomer court cited large swaths of Milani and Smith's article, including the following discussion:

> [B]eing denied an opportunity to address the issue that ultimately proves dispositive of a case is no different than a complete denial of an opportunity to be heard. If a court perceives the issues on appeal as different from those addressed by the parties, the parties should have a right to receive notice of the court's concern about those issues and to present arguments on them. Without this right, the opportunity to be heard is but a "teasing illusion." Allowing a party to submit briefs and arguments on what the party believes to be the issues, but denying that party the opportunity to be heard on the issue the court deems dispositive, is akin to granting citizens free speech but barring them from speaking on issues of public concern. In both situations, the exception renders the right meaningless.

Milani & Smith, 69 Tenn. L. Rev. at 268-69 (footnotes omitted).

See also Justice Ann Walsh Bradley's concurrence in City of Janesville v. CC Midwest, Inc., 2007 WI 93, ¶68, 302 Wis. 2d 599, 641, 734 N.W.2d 428, 450 (Bradley, J., concurring), explaining the fundamental premise of the adversary system:

> The rule of law is generally best developed when issues are raised by the parties and then tested by the fire of adversarial briefs and oral arguments. Indeed, "[t]he fundamental premise of the adversary process is that these advocates will uncover and present more useful information and arguments to the

(continued)

6

¶105 Furthermore, this kind of violation of due process may undermine the validity and legitimacy of the court's decision: "If notice is not given, and the adversary process is not permitted to function properly, there is an increased chance of error . . . and with that, the possibility of an incorrect result." Lankford v. Idaho, 500 U.S. 110, 127 (1991).

¶106 Moreover, the lead opinion violates a basic rule of appellate review by bypassing the adversary process and raising and deciding a dispositive issue on its own without the benefit of briefs or argument.[8]

---

decision maker than would be developed by a judicial officer acting on his own in an inquisitorial system." Adam A. Milani & Michael R. Smith, Playing God: A Critical Look at Sua Sponte Decisions By Appellate Courts, 69 Tenn. L. Rev. 245, 247 (2002), citing United States v. Burke, 504 U.S. 229, 246, 112 S. Ct. 1867, 119 L. Ed. 2d 34 (1992) (Scalia, J., concurring).

[8] "As various members of this court have said, we should not 'reach out and decide issues' that were not presented to the court by the parties." Dairyland Greyhound Park, Inc., v. Doyle, 2006 WI 107, ¶335, 295 Wis. 2d 1, 719 N.W.2d 408 (Roggensack, J., concurring in part & dissenting in part) (quoting Town of Beloit v. Cty. of Rock, 2003 WI 8, ¶72, 259 Wis. 2d 37, 657 N.W.2d 344 (Abrahamson, C.J., dissenting)). See also State v. Thompson, 2012 WI 90, ¶¶9, 60, 342 Wis. 2d 674, 818 N.W.2d 904 (declaring that the court should not decide issues that are not briefed).

(continued)

¶107 In addition to issues of violating due process and appellate practice, as a factual matter, if counsel for the defendant had had an opportunity to address exigent circumstances, counsel might have presented evidence and argument that significantly undercut the lead opinion's presentation of what might have been (but was not and might not be) the State's position on exigent circumstances.

¶108 For example, a key factual sticking point in the lead opinions's exigent circumstances analysis is that the record does not demonstrate that law enforcement could not have timely secured a warrant. The lead opinion presents no evidence establishing approximately how long it would have taken to obtain a warrant for the blood draw in Dane County. Yet the

---

The United States Supreme Court has often explained the fundamental importance of the adversarial presentation of issues. See, e.g., Penson v. Ohio, 488 U.S. 75 (1988) ("This system is premised on the well-tested principle that truth——as well as fairness——is 'best discovered by powerful statements on both sides of the question.'" (citations omitted)); Polk Cty. v. Dodson, 454 U.S. 312, 318 (1981) ("The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness."); Mackey v. Montrym, 443 U.S. 1, 13 (1979) ("[O]ur legal tradition regards the adversary process as the best means of ascertaining truth and minimizing the risk of error . . . .").

See also State v. Negrete, 2012 WI 92, ¶80 n.20, 343 Wis. 2d 1, 819 N.W.2d 749 (Abrahamson, C.J., dissenting) ("Scholars have made similar observations. See, e.g., Stephan Landsman, Readings on Adversarial Justice: The American Approach to Adjudication (1988); Jerold H. Israel, Cornerstones of the Judicial Process, Kan. J.L. & Pub. Pol'y, Spring 1993, at 5; Ellen E. Sward, Values, Ideology, and the Evolution of the Adversary System, 64 Ind. L.J. 301, 316-19 (1989).").

lead opinion, without any evidentiary record, concludes that the officer did not have time.

¶109 At the suppression hearing, which addressed whether the officer had probable cause to arrest and the officer's compliance with the implied consent statute, the officer testified as follows on cross-examination by defense counsel and on redirect examination by the State that he had the time to get a warrant:

On cross-examination of Deputy Schiro by defense counsel:

> Q. And you had plenty of time in this case to get a warrant, didn't you?
>
> A. Yes
>
> . . . .

On redirect examination of Deputy Schiro by the State:

> Q. You testified on cross-examination, Deputy Schiro, that you had plenty of time to get a warrant before the blood draw. Why didn't you?
>
> A. I believe I did not have to.

¶110 The lead opinion rejects the Dane County deputy's testimony as the deputy's subjective belief. The lead opinion reminds us that the totality of the circumstances test for exigent circumstances is an objective one. See lead op., ¶36 & n.9.

¶111 Relying on United States v. Richardson, 208 F.3d 626, 629 (7th Cir. 2000), the lead opinion reasons that "a police officer's subjective belief that exigent circumstances exist is insufficient to make a warrantless search." The instant case is distinguishable from Richardson. Here, the officer testified

9

that he did not believe there were exigent circumstances. Because the Fourth Amendment puts the burden to prove the reasonableness of a warrantless search on the government, it is one thing to ignore the officer's subjective, self-serving belief that he did not have time to get a warrant and a wholly different issue to rely on the officer's statement that he had time to get a warrant as an objective evaluation of exigency.

¶112 Furthermore, defense counsel might have offered as expert testimony the deputy's testimony about whether he had time to get a warrant. The testifying deputy has worked for 15 years as a Dane County law enforcement officer, and he ought to be qualified to testify from personal, professional expertise about the time needed to get a warrant in Dane County.

¶113 Advancements have been made for the expeditious processing of warrant applications. McNeely, 133 S. Ct. at 1561-63. See Wis. Stat. §§ 968.12(3)(a)-(d) (authorizing search warrants on oral testimony communicated to the judge by telephonic, radio, or other means of electronic communication). The Dane County Circuit Court has a system of 24/7 duty judges to provide telephonic warrants. See Dane County Court Rules, Rule 102, entitled "Duty Judge Responsibility."

¶114 Indeed the Dane County deputy's view on how long it would take to get a telephonic warrant in Dane County ought to be more reliable than the unsupported view of the three justices joining the lead opinion. Furthermore, the Dane County Circuit Court's view on how long it would take to get a telephonic

warrant in Dane County ought to be more reliable than the view of the three justices joining the lead opinion.

¶115 In rendering its decision declaring the blood draw unconstitutional, the circuit court declared as an aside that there were no exigent circumstances causing an exception to the warrant requirement and that the deputy had time to get a warrant:

> [T]here are no exigent circumstances that are identified here that would cause an exception to the warrant requirement. . . . [t]he officer testified that there was no reason he could not have gotten a warrant. . . . There is nothing to suggest that there were exigent circumstances that would obviate the warrant requirement, so that's where we need to leave it then today.

¶116 In addition, defense counsel might have challenged the lead opinion's reliance on the defendant's prohibited alcohol concentration of 0.02 percent as supporting exigent circumstances. Blood alcohol concentration, BAC, refers to the amount of alcohol in the driver's blood. Prohibited alcohol content, PAC, refers to the legal limit of alcohol in a driver's blood.[9]

---

[9] See Wis. Stat. § 346.63, Operating under influence of intoxicant or other drug:

> (1) No person may drive or operate a motor vehicle while:
>
>     . . . .
>
> (b) The person has a prohibited alcohol concentration.

See Wis. Stat. § 340.01(46m):

> "Prohibited alcohol concentration" means one of the following:

(continued)

11

¶117 According to the lead opinion, a 0.02 percent BAC will disappear in one to two hours. Lead op., ¶45. With this shortened timeline, the time available for an officer to obtain a warrant decreases, according to the lead opinion. This proposition is central to the analysis in the lead opinion.

¶118 Under closer scrutiny, it appears that this critical one-to-two-hour time period might have elapsed before the blood draw was requested or taken and that the lowered PAC is irrelevant to the exigent circumstances analysis in the instant case.

¶119 The record does not reveal the time at which the defendant stopped drinking or the time at which the accident occurred. See lead op., ¶47. The record demonstrates only that the blood draw was roughly two hours after the sheriff's office was advised of the accident. See lead op., ¶13.

¶120 Thus, the defendant's last drink and the accident were obviously more than two hours before the blood was drawn. If a 0.02 percent BAC will dissipate in one to two hours (as the lead opinion suggests), there were no exigent circumstances when the blood draw was made because the BAC in all probability would had already dissipated.

---

(a) If the person has 2 or fewer prior convictions, suspensions, or revocations, as counted under s. 343.307(1), an alcohol concentration of 0.08 or more.

(c) If the person is subject to an order under s. 343.301 or if the person has 3 or more prior convictions, suspensions or revocations, as counted under s. 343.307(1), an alcohol concentration of more than 0.02.

¶121 The record nevertheless indicates that the defendant's BAC was in all probability more than 0.02 percent. Several witnesses reported smelling intoxicants on the defendant. According to the Assistant District Attorney's argument at the suppression hearing, a person with a 0.11-.13 percent BAC will not exude "an incredibly heavy" odor. Thus, a person with a 0.02 percent BAC would have exuded even less of an odor of intoxicants.[10]

¶122 If the defendant's BAC was substantially higher than 0.02 percent, then law enforcement would have had more than one to two hours after the last drink within which to obtain a warrant for a blood draw and still gather evidence that defendant violated the law.

¶123 In either eventuality, that is, whether the defendant had a .02 percent BAC or had a higher BAC, the lead opinion's reliance on the defendant's lower PAC threshold to support exigent circumstances falls apart.

¶124 Defense counsel might have shown that the hour before law enforcement requested the hospital for a blood draw and the hour between the officer's request for a blood draw and the blood draw were sufficient times for the officer to get a warrant.

---

[10] The assistant district attorney set forth this proposition in order to explain why Deputy Schiro did not testify that he recalled smelling alcohol on the defendant. See Pet. App. at 77.

¶125 The evidence of the defendant's medical condition was sketchy. It is thus unclear whether it would have led a reasonable officer to conclude that there was no time to obtain a warrant before blood was drawn.

¶126 Defense counsel might have also shown that several law enforcement officers were on the accident scene and were available to aid Deputy Schiro. Deputy Schiro also talked with his sergeant.

¶127 The involvement of other law enforcement agents cuts against the existence of exigent circumstances. There is nothing in the record indicating that the several officers involved were so busy finding or identifying the driver, extensively investigating the accident, tending to injured victims, removing the deer and motorcycle from the road, or engaging in other activities that neither they nor the sergeant could not initiate a telephone warrant process.

¶128 In addition, defense counsel might have persuaded the court to follow precedent, namely State v. Kennedy, 2014 WI 132, ¶34 n.13, 359 Wis. 2d 454, 856 N.W.2d 834, in which the court explained its reluctance to address exigent circumstances when the State does not argue that exigent circumstances existed:

> The State, which would bear the burden, does not argue that exigent circumstances existed in this case. Neither the State nor Kennedy focus on this issue. Whether an exigency exists in a given case will vary depending on any number of facts or circumstances, as law enforcement investigations are often extraordinarily fluid situations. Our holding in this case must not be read to affirmatively conclude that exigent circumstances did not support the warrantless investigatory blood draw performed on Kennedy.

14

Nonetheless, our analysis remains focused on the arguments addressed by counsel . . . .[11]

¶129 The legal effect of the exigent circumstances analysis in the lead opinion is that it allows a warrantless blood draw when it is unclear from the record whether law enforcement had time to secure a warrant. Yet McNeely declares that no exigent circumstances exist when there is time to secure a warrant.

¶130 Furthermore, the legal effect of the exigent circumstances analysis in the lead opinion creates an impermissible per se rule that no warrant is needed to draw blood for certain drivers. It is unclear, however, to whom the per se rule is applicable: To drivers who are unconscious from a motor vehicle accident? To unconscious drivers of motor vehicles who are restricted to a 0.02 BAC? To seriously injured hospitalized drivers?

¶131 In other words, law enforcement doesn't know which elements of the totality of the circumstances present in the instant case, see lead op., ¶3, are essential to justify a

---

[11] See also Bailey v. State, 790 S.E.2d 98, 104 (Ga. Ct. App. 2016):

> The State, however, produced no evidence of exigent circumstances. For example, there was no evidence regarding how long the warrant process was expected to take and whether officers could have been seeking a warrant while Bailey was being transported to the hospital. Thus, this could have been the situation imagined by the McNeely Court "in which the warrant process will not significantly increase the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer."

15

warrantless blood draw. The lead opinion provides no clear direction for law enforcement to follow in the future.

¶132 In sum, as a matter of law, when both the State and the defendant have not had the opportunity to offer evidence or argument on the issue of exigent circumstances and this court decides the case on the dispositive issue of exigent circumstances, the defendant has not received a full and fair due process evidentiary or appellate hearing on his Fourth Amendment motion to suppress. The instant case does not present an extraordinary situation justifying departure from the rule requiring the parties to present the issues.

¶133 In sum, as a matter of fact, the lead opinion cannot condone the warrantless blood draw on exigent circumstances with the sparse record of facts before it.[12] As the Dane County

---

[12] The lead opinion also considers the four-part reasonableness test that applies once exigent circumstances are established that was set forth in State v. Kennedy, 2014 WI 132, ¶17, 359 Wis. 2d 454, 856 N.W.2d 834. See lead op., ¶25.

Because I conclude that there were no exigent circumstances in the instant case, I do not respond to the lead opinion's application of these factors. However, I am skeptical that the instant case satisfies the fourth factor, that "the arrestee presents no reasonable objection to the blood draw." Kennedy, 359 Wis. 2d 454, ¶17. Because the defendant was unconscious, he had no chance to object.

The lead opinion's response seems to be that "the fourth factor speaks to the reasonableness of the type of search employed, not whether a warrant was required to conduct the search." Lead op., ¶26 n.8.

(continued)

Circuit Court observed in declaring the relevant provisions of Wisconsin's implied consent law unconstitutional:

> All the police officer had to do to comply with the Fourth Amendment was to get a warrant. The defendant was not about to go anywhere but to the operating room. The duty judge was a phone call away. Following McNeely, we routinely handle blood draw search warrants by telephone. I respectfully suggest that procedure is more consonant with the Fourth Amendment than reading a form to an unconscious man and then ordering his blood to be taken.

II

¶134 Because I conclude that exigent circumstances did not render the warrantless blood draw constitutionally permissible, I turn to considering the provisions of the implied consent law regarding unconscious drivers. According to the statute, unconscious drivers incapable of withdrawing consent are presumed not to have withdrawn consent to the blood draw. See Wis. Stat. § 343.305(3)(b).

¶135 The State did not solicit any testimony at the suppression hearing that the defendant's consent to the blood

---

Characterizing this factor as a reference to the type of test conducted and asserting that the defendant raised no objection to the type of search misses the point: The defendant was unconscious. The lead opinion has no way of knowing whether the defendant was "one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing . . . . ." Schmerber v. California, 384 U.S. 757, 771 (1966). The lead opinion seems to concede that the defendant did not impliedly consent to the search.

I do not understand the reasoning of the lead opinion in its footnote, but it seems internally inconsistent.

17

draw was given in fact and was voluntary. The State relied on the statute alone to prove the defendant's consent.

¶136 Adhering to the reasoning set forth in State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, I conclude that the statute's unconscious driver provisions are unconstitutional because unconscious drivers have not freely and voluntarily consented to the warrantless blood draw under the Fourth Amendment. Therefore, the warrantless blood test in the instant case should be suppressed.

¶137 Throughout the course of the instant litigation, the State has relied on consent as the applicable exception to the warrant requirement to validate the warrantless blood draw. The State's position is that the defendant's statutory "implied consent," deemed to have occurred before the defendant was arrested for suspected drunk driving, is voluntary consent for purposes of the consent exception to the Fourth Amendment's warrant requirement.

¶138 The parties disagree whether this statutory implied consent satisfies the Fourth Amendment requirement of consent. No federal or state cases are directly on point, and, as the court of appeals' excellent certification memorandum explains, tension exists in the case law.

¶139 Because a majority of the court has not written on the constitutional issue, I do not address it at length.

¶140 Upon considering the parties' arguments, the reasoning of the circuit court, and case law from the United States Supreme Court and the states, I conclude that the Wisconsin

18

implied consent statute, applied to unconscious drivers, does not provide an independent and valid consent exception to the warrant requirement.

¶141 Warrantless searches are unreasonable, subject to a few narrow exceptions. State v. Artic, 2010 WI 83, ¶29, 327 Wis. 2d 392, 786 N.W.2d 430. One such exception is a search conducted pursuant to consent. The general rule is that the State must prove that consent was "given in fact by words gestures, or conduct" and that the consent was "voluntary." Artic, 327 Wis. 2d 392, ¶30.

¶142 Whether the consent was given in fact is a "question of historical fact" that an appellate court will uphold "if it is not contrary to the great weight and clear preponderance of the evidence." Artic, 327 Wis. 2d 392, ¶30.

¶143 If the State establishes consent in fact, the State must prove that the consent was given freely and voluntarily. Schneckloth v. Bustamonte, 412 U.S. 218, 222, 225 (1973) (consent must result from "an essentially free and unconstrained choice").[13] The State must meet this burden of proof by clear

_____

[13] In State v. Phillips, 218 Wis. 2d 180, 577 N.W.2d 794 (1998), this court provided a non-exclusive list of factors for courts considering the voluntariness of consent to consider:

(1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what

(continued)

19

and convincing evidence. Artic, 327 Wis. 2d 392, ¶32. "The determination of voluntariness is a mixed question of fact and law based upon an evaluation of the totality of all the surrounding circumstances." Artic, 327 Wis. 2d 392, ¶32 (internal quotation marks omitted).

¶144 The consent required in Fourth Amendment cases must be "'an essentially free and unconstrained choice,' not 'the product of duress or coercion, express or implied.'" Artic, 327 Wis. 2d 392, ¶32 (quoted source omitted).

¶145 The State argues that drivers on a Wisconsin highway have given "implied consent" to a warrantless blood draw; that statutory "implied consent" is the equivalent of actual voluntary consent for Fourth Amendment purposes; and that the Wisconsin implied consent statute is constitutional. According to the State, McNeely does not govern this case because McNeely concerns exigent circumstances, not consent.

¶146 The State asks this court to hold that the statutory implied consent supplies constitutional consent for conscious and unconscious drivers. The State asks this court to overturn State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, in which the court of appeals held that the implied

---

characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent (emphasis added).

State v. Artic, 2010 WI 83, ¶32, 327 Wis. 2d 392, 786 N.W.2d 430 (citing Phillips, 218 Wis. 2d at 198-203).

20

consent statute relating to conscious drivers does not violate the Fourth Amendment because it provides the person with the choice of providing actual consent to a blood draw or facing license revocation. Under Padley, the statutory implied consent of drivers is consent to this choice, not consent to a blood draw. The State asks this court to overturn Padley because the import of Padley is to cast doubt on whether the statute's implied consent suffices as voluntary consent in all circumstances for Fourth Amendment purposes.[14] The State's position is that the statutory implied consent is sufficient for Fourth Amendment purposes in all circumstances.[15]

¶147 The defendant argues that Padley was correctly decided. He asserts that he did not consent in fact to a blood draw because he was unconscious; that any consent was not

---

[14] The court of appeals explained that several cases, including the following, may be inconsistent: State v. Neitzel, 95 Wis. 2d 191, 289 N.W.2d 828 (1980); State v. Wintlend, 2002 WI App 314, 258 Wis. 2d 875, 655 N.W.2d 745; Village of Little Chute v. Walitalo, 2002 WI App 211, 256 Wis. 2d 1032, 650 N.W.2d 891; State v. Piddington, 2001 WI. 24, 241 Wis. 2d 754, 623 N.W.2d 528; State v. Disch, 129 Wis. 2d 225, 385 N.W.2d 140 (1986). See State v. Howes, No. 2014AP1870-CR, certification by Wisconsin Court of Appeals (Wis. Ct. App. Jan. 28, 2016).

Thus, the court of appeals requested that this court issue an authoritative decision clarifying the law.

[15] The Padley court noted that, "at least in the context of incapacitated drivers, 'implied consent' is a sufficient basis on which to proceed with a warrantless search." The Padley court acknowledged there may be a tension between its decision and the statutory language relating to incapacitated drivers. See State v. Padley, 2014 WI App 65, ¶39 n.10, 354 Wis. 2d 545, 849 N.W.2d 867.

21

voluntary because the State's interpretation of the statute makes implied consent irrevocable;[16] and that the statutory provisions regarding unconscious drivers are the functional equivalent of a categorical rule rejected in McNeely.[17]

¶148 Relying on State v. Padley, 2014 WI App 65, ¶26, 354 Wis. 2d 545, 849 N.W.2d 876, in which the court of appeals distinguished between implied consent (which is consent to choose between a blood draw and license revocation) and actual voluntary consent for Fourth Amendment purposes, the circuit court correctly reasoned, in my opinion, that an unconscious defendant did not give actual voluntary consent to a blood draw and that statutory implied consent is analogous to the categorical exigent circumstances declared invalid in McNeely.

¶149 Padley has statewide precedential effect. Wis. Stat. § 752.41(2). We should not overrule precedent without a compelling justification. Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), a recent United States Supreme Court case, supports Padley and the circuit court's decision in the instant

---

[16] See Byars v. State, 336 P.3d 939, 945 (Nev. 2014) (a "necessary element of consent is the ability to limit or revoke it") (citing Florida v. Jimeno, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents.")); State v. Halseth, 339 P.3d 368, 371 (Idaho 2014) ("Inherent in the requirement that consent be voluntary is the right of the person to withdraw that consent.").

[17] See State v. Wulff, 337 P.3d 575, 582 (Idaho 2014) (declaring that Idaho's implied consent law, which did not allow drivers to revoke consent to a blood draw, was an unconstitutional per se exception to the Fourth Amendment).

22

case. In Birchfield, the United States Supreme Court recognized that the longstanding rule permitting a search incident to arrest allows warrantless breath tests. Nevertheless, the Court recognized that blood draws are significant intrusions into the body and concluded that the Fourth Amendment does not categorically permit warrantless blood draws as valid incident to an arrest for drunk driving. Birchfield, 136 S. Ct. at 2184. Referring to McNeely, the Court explained that "[n]othing prevents the police from seeking a warrant for a blood test when there is sufficient time to do so in the particular circumstances or from relying on the exigent circumstances exception to the warrant requirement when there is not." Birchfield, 136 S. Ct. at 2184.

¶150 If the United States Supreme Court refuses to categorically permit a warrantless blood draw premised on the well-established search incident to arrest exception to the warrant requirement, a blood draw based on a statutorily imputed implied consent surely cannot pass muster. Birchfield, therefore, supports the notion that warrantless blood draws justified by only statutory implied consent (rather than voluntary consent in fact) are unreasonable under the Fourth Amendment. Birchfield also supports the notion that such blood draws, especially regarding an unconscious driver, lead to impermissible per se exceptions to the Fourth Amendment.

¶151 In sum, in addition to my conclusions regarding the errors in the lead opinion in relying on exigent circumstances, I conclude that the warrantless blood test in the instant case

23

is not the product of actual consent in fact made freely and voluntarily.

¶152 Accordingly, I conclude that the blood test results should be suppressed as a violation of the Fourth Amendment.

¶153 For the reasons set forth, I write separately to affirm the order of the circuit court suppressing evidence of the blood test.

¶154 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent and that Justice DANIEL KELLY joins Part II of this dissent insofar as it discusses the constitutionality of Wis. Stat. § 343.305(3)(b).

ATTACHMENT 1


343.305   Tests for intoxication; administrative suspension and court-ordered revocation.

. . . .

(3)  Requested or required.

. . . .

(ar)

1. If a person is the operator of a vehicle that is involved in an accident that causes substantial bodily harm, as defined in s. 939.22 (38), to any person, and a law enforcement officer detects any presence of alcohol, a controlled substance, a controlled substance analog or other drug, or a combination thereof, the law enforcement officer may request the operator to provide one or more samples of his or her breath, blood, or urine for the purpose specified under sub. (2). Compliance with a request for one type of sample does not bar a subsequent request for a different type of sample. A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subdivision and one or more samples specified in par. (a) or (am) may be administered to the person. If a person refuses to take a test under this subdivision, he or she may be arrested under par. (a).

2. If a person is the operator of a vehicle that is involved in an accident that causes the death of or great bodily harm to any person and the law enforcement officer has reason to believe that the person violated any state or local traffic law, the officer may request the operator to provide one or more samples of his or her breath, blood, or urine for the purpose specified under sub. (2). Compliance with a request for one type of sample does not bar a subsequent request for a different type of sample. A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subdivision and one or more samples specified in par. (a) or (am) may be administered to the person. If a person refuses to take a test under this subdivision, he or she may be arrested under par. (a).

(b) A person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection, and if a law enforcement officer has probable cause to believe that the person has violated s. 346.63 (1), (2m) or (5) or a local ordinance in conformity therewith, or s. 346.63 (2) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, or detects any presence of alcohol, controlled substance, controlled substance analog or other drug, or a combination thereof, on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe the person has violated s. 346.63 (7), one or more samples specified in par. (a) or (am) may be administered to the person.